UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GEORGIA MICHAELIDES,

                Plaintiff,

   -against-

PENTA RESTORATION CORPORATION,
and JUSTIN CLYMER, individually,

                Defendant(s).
------------------------------------------------------------------------x

**VERIFIED COMPLAINT**

PLAINTIFF DEMANDS
A TRIAL BY JURY

      Plaintiff GEORGIA MICHAELIDES ("Plaintiff"), by and through her attorneys, White, Hilferty & Albanese., P.C., hereby complains of Defendant PENTA RESTORATION CORPORATION ("Penta Restoration") and Defendant Justin Clymer ("Clymer") upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action alleging that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin Code 8-101, *et seq.* and seeks damages to redress the injuries she suffered as a result of being discriminated against on the basis of her sex, subjected to unlawful sexual harassment, hostile work environment, discrimination and retaliation.

## JURISDICTION & VENUE

2. Jurisdiction of this Court is proper 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and local law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

5. Plaintiff filed charges of discrimination and retaliation upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received from the EEOC a notice of right-to-sue, dated March 25, 2021.

7. Plaintiff has filed this action within 90 days of receipt of said notice of right-to-sue.

## THE PARTIES

8. Plaintiff was and is a resident of the State of New York.

9. Defendant Penta Restoration is a domestic business corporation, duly existing pursuant to, and by the virtue of, the laws of New York, that does business in the State of New York and is located in the State of New York, Queens County.

10. At all times relevant, Defendant Penta Restoration owns, operates, and/or maintains its business in Queens County, New York.

11. At all times relevant, Defendant Penta Restoration's employee Defendant Justin Clymer was and is an employee at Penta Restoration Corp.

12. At all times relevant, Defendant Clymer held supervisory authority over Plaintiff.

## MATERIAL FACTS

13. On February 24, 2020, Defendant Penta Restoration hired Ms. Michaelides as an Assistant Project Manager.

14. On January 22, 2021, Defendant Penta Restoration unlawfully terminated Ms. Michaelides in retaliation to her complaint of sexual harassment against Defendant Clymer.

15. Defendant Clymer routinely subjected Ms. Michaelides to sexual harassment and gender discrimination in the workplace as described in depth below.

16. Defendant Penta Restoration manufactured pretextual grounds to conceal its discriminatory and retaliatory animus, namely, that it had nowhere to assign Ms. Michaelides. However, three days prior to Ms. Michaelides' termination, Defendant Penta Restoration hired a new Assistant Project Manager.

## *SEXUAL HARASSMENT AND GENDER DISCRIMINATION*

17. In late February 2020, when Ms. Michaelides first met Defendant Clymer, he told her that he lived in a basement and was in an unhappy marriage. This occurred during Ms. Michaelides' first week of work.

18. Defendant Clymer immediately asked Ms. Michaelides out for dinner and told her that they could not discuss business at all, evincing his inappropriate intentions. Ms. Michaelides politely declined; however, Defendant Clymer did not cease there.

19. During the New York State stay-at-home mandate from March through June 2020, Defendant Clymer asked to work together at Ms. Michaelides' house, and upon returning to work, offered to drive Ms. Michaelides to work.

20. Defendant Clymer's suggestions made Ms. Michaelides feel extremely uncomfortable, and she asked Principal/Director of Operations George Raptis whether she could return to work once she got her new car (her current lease expired, and she was in process of obtaining a new car).

21. On December 10, 2020, Defendant Clymer also grabbed Ms. Michaelides' face and kissed her on the cheek.

22. On December 11, 2020 during a conference call with Dimitri from Knossos, Defendant Clymer asked Ms. Michaelides whether she wanted to "pinch his butt."

23. Besides subjecting Ms. Michaelides to sexual harassment, Defendant Clymer also discriminated against her based upon gender.

24. Upon information and belief, Defendant Clymer mistreated previous female Assistant Project Manager Sage Gu, who resigned in eight months because of his discriminatory behavior towards her. Defendant Clymer often talked down to her and assigned her menial tasks such as fetching his coffee.

25. During her employment, Raptis often told Ms. Michaelides that he could not understand why Defendant Clymer gave Ms. Michaelides such little work and told Defendant Clymer he must pass off work to Ms. Michaelides. Defendant Clymer ignored Raptis' directives.

26. On May 20, 2020, Defendant Clymer evinced his discriminatory animus when he stated to Ms. Michaelides that women do not belong in construction and that it was a "man's field." This conversation was in reference to Architect of Record (AOR) Claudia Goudas. Defendant Clymer stated that Claudia should have known her place when in a disagreement with the owner's rep Louis Marte. Nick Frazis entered the room and Ms. Michaelides stated to him, "Nick, can you believe what he just said to me?" Frazis, offended by Defendant Clymer's comment, began arguing with Defendant Clymer about women and their role in construction and the military. Defendant Clymer's comments during their conversation exhibited his discriminatory animus towards women because he stated women cannot do

what men can. Ms. Michaelides asked Defendant Clymer why he hired her if it's a man's field and he said, "Come on . . . you know why."

27. On May 22, 2020, Ms. Michaelides emailed Defendant Clymer stating, "Like you said to me two days ago in front of Nick women do not belong in this field. It's a man's field . . . you are not a team player and now I understand why." Ms. Michaelides bcc'd Raptis to this email. Raptis then later disclosed to Defendant Clymer about Ms. Michalides bcc'ing him. Defendant Clymer confronted Ms. Michaelides about her bcc'ing Raptis to the email.

28. Days after, Project Manager David Nicklas told Ms. Michaelides that Defendant Clymer did not want her working with him and that Nicklas could "have" Ms. Michaelides and Defendant Clymer would take upon the male APM Defendant would be hiring. Ms. Michaelides and Nicklas both asked Raptis to reassign Ms. Michalides to his team, but Raptis denied their request.

29. During her employment, Defendant Clymer made it difficult for Ms. Michaelides to execute her responsibilities by including but not limited to: excluding her from meetings; accusing her of failing to remember details; omitting pertinent information in relation to client orders and projects; directing her not to respond to client emails and omitting her from email communications; and providing her with conflicting directives.

30. On May 22, 2020, Defendant Clymer asked Ms. Michaelides to call a client and obtain a color chart. Ms. Michaelides did what Defendant Clymer asked and told him that the client would get back to them within an hour. Defendant Clymer responded, "Try and look online it maybe that simple and quick." Ms. Michaelides replied that she already checked the website and that it was no different from the information that they already had. Defendant Clymer again belittled Ms. Michaelides and stated, "That's it, that was so simple & quick—

thank you!" Defendant Clymer spoke to Ms. Michaelides in a demeaning manner because of her female gender. Defendant Clymer did not interact this way with other male employees or subcontractors.

31. On May 23, 2020, Ms. Michaelides emailed Owner Chris Fillas about her difficulties working with Defendant Clymer. Ms. Michaelides' email detailed a myriad of issues she faced with executing her responsibilities because of Defendant Clymer as will be described in depth below.

32. During her employment, Defendant Clymer prohibited Ms. Michaelides from responding to emails where she was included on a chain. When Ms. Michaelides did find it necessary to speak directly with a subcontractor, Defendant Clymer accused her of annoying the subcontractor and even belittled her to subcontractors by stating she did not know what she was talking about. Ms. Michaelides learned that Defendant Clymer lied about subcontractors being unhappy with Ms. Michaelides calling them because multiple subcontractors thanked her for contacting them. Although Ms. Michaelides asked Defendant Clymer to include her on pertinent emails, he intentionally failed to do so. Defendant Clymer would direct Ms. Michaelides not to respond to emails even if directly addressed to her. For example, on April 2, 2020, James Yamout emailed Ms. Michaelides directly and asked her a question, Ms. Michaelides replied, and Defendant Clymer immediately emailed her, "I already answered!!!" Ms. Michaelides did not know Defendant Clymer had answered because he never included her on email communications. In addition, Yamout asked Ms. Michaelides directly. Defendant Clymer excluded Ms. Michaelides from pertinent emails and prohibited her from responding to inhibit her growth in the company because of her female gender.

33. Defendant Clymer frequently made issue with Ms. Michaelides taking initiative to contact subcontractors regarding their requests. When Ms. Michaelides called Zach from Artic about a price, Defendant Clymer scolded her for doing so and stated he already spoke with Artic. Defendant Clymer directed her not to call anyone unless asking him first. Defendant Clymer prevented Ms. Michaelides from building relationships with subcontractors by excluding her from pertinent communications and prohibiting her from contacting people.

34. Furthermore, when Claudia called Ms. Michaelides directly asking for assistance with items she requested weeks ago. Defendant Clymer coincidentally called Claudia and thereafter prohibited Ms. Michaelides from contacting Claudia and accused her of confusing Claudia. Claudia, however, called Ms. Michaelides back and did not express any confusion.

35. Defendant Clymer also directed Ms. Michaelides not to convey any information to Raptis and then was to blame when Defendant Clymer did not follow Raptis' directions or missed deadlines. For example, Defendant Clymer directed Ms. Michaelides not to scan contracts into the system; however, when Raptis searched for a contract one day, he asked why it had not been scanned and directed Ms. Michaelides to scan them.

36. Defendant Clymer often failed to provide Ms. Michaelides with proper support. Ms. Michaelides asked to shadow Defendant Clymer when he reviewed submittals, but he only allowed her to shadow him once and they did not finish the review. In August 2020, Ms. Michaelides asked to review a file with Defendant Clymer who agreed, and she prepared all of the materials, but Defendant Clymer later refused to review the file with her.

37. Defendant Clymer also gave Ms. Michaelides conflicting directives. On one occasion, a client requested three submittals and Ms. Michaelides asked Defendant Clymer where to

look for certain information. Defendant Clymer directed Ms. Michaelides to look in two files; however, she could not locate the information. When Ms. Michaelides informed Defendant Clymer, he told her to look somewhere different. Defendant Clymer frequently assigned Ms. Michaelides tasks with either conflicting or minimal directives and then prohibited her from reaching out to other staff for assistance.

38. Whenever Ms. Michaelides asked Defendant Clymer work-related questions, he avoided a direct response. In August 2020, she asked Defendant Clymer about a contract and he instructed her to go back and look through the contract.

39. On August 13, 2020, Defendant Clymer took the grout samples that Claudia texted Ms. Michaelides not to forget in order to pick the colors. Ms. Michaelides texted Raptis and asked that he direct Defendant Clymer to return the samples.

40. She also informed Raptis that Defendant Clymer told her she was lucky to work for him and not Marc Bass because Bass would treat her worse than he did, and Raptis witnessed this comment. Defendant Clymer admitted to mistreating Ms. Michaelides and Ms. Michaelides told Defendant Clymer that he could not mistreat her because she worked for Raptis and Chris Fillas; however, he replied that she was his Assistant Project Manager. Ms. Michaelides also informed Raptis that Defendant Clymer removed her from the 31st street project. Raptis responded that he would speak to Ms. Michaelides about Defendant Clymer's conduct, but failed to address Ms. Michaelides' complaint.

41. On August 18, 2020, Defendant Clymer failed to provide Ms. Michaelides names required to process a shipment. Ms. Michaelides stated to Defendant Clymer, "This is what I mean you do not give me all the information and you have to do it all over again." Defendant Clymer accused Ms. Michaelides of failing to remember details.

42. On August 27, 2020, Ms. Michaelides informed Defendant Clymer she left 31st street and Clymer responded, "Ok, did I miss something, was there a reason you went there today…? You didn't mention anything about it yesterday to me." Defendant Clymer removed Ms. Michaelides from the 31st street project and Colony Club. Defendant Penta Restoration brought in another APM on these projects despite saying they did not need help on them anymore.

43. On September 18, 2020, Ms. Michaelides complained to Fillas because Raptis did not provide her any relief, who instead began bombarding her with work. He tried to physically send her to FDNY to bring a check despite the company having Harry who normally completes these assignments. Harry eventually handled the task.

44. On December 7, 2020, Defendant Clymer questioned Ms. Michaelides' honesty when he asked her to follow up on an email and she told him she was driving and would get to it once she got home. This was after work hours at 7:45 pm. Ms. Michaelides was in the process of driving back and forth because she was moving to her new apartment.

45. Defendant Clymer treated her Ms. Michaelides in this manner because she rejected his sexual advances, because she complained about his sexual harassment (as described below), and because of his general bias towards women that worked in construction.

## *RETALIATION*

46. On December 11, 2021, Ms. Michaelides emailed Raptis about Defendant Clymer's sexual harassment and thereby engaged in protected activity.

47. On December 13, 2021 Ms. Michaelides submitted another complaint of sexual harassment to Raptis

48. On December 15, 2021, Ms. Michaelides submitted her complaint of sexual harassment to Fillas.

49. On December 15, 2020, Ms. Michaelides texted Raptis, "George please do not let me meet with him alone again. He was trying to explain to me what he wants me to price out under the exercise equipment and he says to me you know $ means dollar value. He is passive aggressive." Raptis failed to respond to this message.

50. Ms. Michaelides on multiple occasions expressed she felt uncomfortable working with Defendant Clymer; however, Defendant Penta Restoration failed to reassign her to work with someone else. Defendant Penta Restoration instead terminated Ms. Michaelides nearly one month after.

51. On December 17, 2020, Ms. Michaelides again texted Raptis expressing her difficult experiences working with Defendant Clymer. Ms. Michaelides mentioned that she emailed Defendant Clymer about an RFI they needed to review for the H20 gateway mounting system and he told her that he would reply/add her to an email stating they first needed a drawing from client DDS. Defendant Clymer failed to add Ms. Michaelides to the email and she called Harry from DDS requesting the items. Harry told Ms. Michaelides that he responded to the email stating he would be providing a drawing; however, because Defendant Clymer intentionally excluded Ms. Michaelides from the email she had no knowledge of this and thereby came off as disorganized to a subcontractor. Ms. Michaelides asked Raptis whether she could review a proposal with Raptis and stated, "I don't want to review it alone with Justin." Raptis replied that he would review the proposal with Ms. Michaelides the following day.

52. On December 18, 2020, Ms. Michaelides texted Raptis, "George I don't want to meet with him alone. He just asked me to meet alone in the conference room."

53. Right before Defendant Penta Restoration's Holiday Party, Fillas told Ms. Micahelides that Defendant Penta Restroation would reassign her to work under Project Manager David Nicklas. This never happened. During the Holiday Party, Ms. Michaelides expressed to Nicklas how happy she was to be working with him in the future and he told her that Defendant Penta Restoration had not mentioned a word to him about the reassignment.

54. On December 31, 2020, Ms. Michaelides texted Raptis, "George, I don't know what the issue is maybe he knows we are not going to be working together anymore but I would like to finish this year off today without stress . . he is being passive aggressive if you can say something I would appreciate it."

55. On January 11, 2021, Defendant Clymer directed Ms. Michaelides to contact Claudia for samples and Claudia replied that she did not need to see the sample at the time. Defendant Clymer responded, "Why can't you just listen to me and do what I ask?" Ms. Michaelides replied she called Claudia to confirm something else and mentioned the samples, but that Claudia told her not to because their office was shutting down due to Covid-19. Raptis was on these emails. Ms. Michaelides asked Raptis whether he agreed with the manner in which Defendant Clymer spoke to Ms. Michaelides, but Raptis agreed with Defendant Clymer.

56. On January 13, 2021, Ms. Michaelides texted Raptis stating, "So when do I not have to work with him any longer George? I thought it was as soon as Snezhka was back."

57. On January 20, 2021, Ms. Michalides sat with Defendant Clymer, Raptis, Bass, Telly and John. Raptis asked Ms. Michaelides whether the correct light sizes were ordered. Ms. Michaelides replied yes, and Defendant Clymer accused Ms. Michaelides of not knowing

what she was talking about and said the incorrect sizes were ordered. Ms. Michaelides reiterated that she ordered the correct samples and called to confirm with company she placed the order with. Raptis turned around and said, "Come on guys." Bass sided with Ms. Michaelides and told her that she was right.

58. On January 22, 2021, Defendant Penta Restoration unlawfully terminated Ms. Michalides' employment.

59. Based on the foregoing, Defendants discriminated against Ms. Michaelides based upon her gender, subjected her to sexual harassment and a hostile work environment, and retaliated against her when she engaged in protected activity.

60. As a result of Defendants' unlawful discriminatory and retaliatory practices, Ms. Michaelides suffered significant financial ramifications, humiliation, outrage, and mental anguish for which Ms. Michaelides claims compensatory damages.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT PENTA RESTORATION**
**(DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000)**

61. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

62. Plaintiff claims Defendant violated Title VII of the Civil Rights Act of 1964, as these titles appear in volume 42 of the United States Code, beginning at Section 2000.

63. Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 "Employer Practices" states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

64. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her female sex and by subjecting her to unlawful sexual harassment.

65. Clymer subjected Ms. Michaelides to sexual harassment when he asked her on a date, asked to come over her house, offered to drive her to work, grabbed her face and kissed her on the cheek, and asked her to pinch his butt.

66. Besides subjecting Ms. Michaelides to sexual harassment, Clymer also discriminated against her because she is a woman. Clymer evinced his discriminatory animus when he stated to Ms. Michaelides that women do not belong in the construction field. Clymer made it difficult for Ms. Michaelides to execute her responsibilities by including but not limited to: excluding her from meetings; accusing her of failing to remember details; omitting pertinent information in relation to client orders and projects; directing her not to respond to client emails; and providing her with conflicting directives.

67. Defendants engaged in unlawful employment practices by allowing sexual harassment and gender discrimination and causing a hostile work environment.

68. As described above, Defendant violated this section as set forth herein.

### SECOND CAUSE OF ACTION AGAINST DEFENDANT PENTA RESTORATION
### (RETALIATION IN VIOLATION OF 42 U.S.C. § 2000)

69. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

70. Title VII prohibits retaliation.

71. 42 U.S.C. § 2000e-3 provides:

   a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an

unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

72. On December 11, 13, and 15, 2021, Ms. Michaelides emailed Raptis and then Fillas about Clymer's sexual harassment and thereby engaged in protected activity.

73. Ms. Michaelides asked to be removed from Clymer's supervisory and expressed that she felt uncomfortable working with him on December 15, 17, and 18, 2020.

74. On January 13, 2021, Ms. Michaelides texted Raptis stating, "So when do I not have to work with him any longer George? I thought it was as soon as Snezhka was back."

75. On January 22, 2021, Defendant unlawfully terminated Ms. Michalides' employment in retaliation to her complaint of sexual harassment against Justin Clymer.

76. Defendant failed to reassign her to work with someone else. Defendant instead terminated Ms. Michaelides nearly one month after.

77. As described above, Defendant violated this section as set forth herein.

**THIRD CAUSE OF ACTION AGAINST DEFENDANTS PENTA RESTORATION AND JUSTIN CLYMER**
**(DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296)**

78. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

79. The New York State Human Rights Law, N.Y. Exec. Law 296 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

80. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her female sex and by subjecting her to unlawful sexual harassment.

81. Defendant Clymer subjected Ms. Michaelides to sexual harassment when he asked her on a date, asked to come over her house, offered to drive her to work, grabbed her face and kissed her on the cheek, and asked her to pinch his butt.

82. Besides subjecting Ms. Michaelides to sexual harassment, Clymer also discriminated against her because she is a woman. Clymer evinced his discriminatory animus when he stated to Ms. Michaelides that women do not belong in the construction field. Clymer made it difficult for Ms. Michaelides to execute her responsibilities by including but not limited to: excluding her from meetings; accusing her of failing to remember details; omitting pertinent information in relation to client orders and projects; directing her not to respond to client emails; and providing her with conflicting directives.

83. Defendants engaged in unlawful employment practices by allowing sexual harassment and gender discrimination and causing a hostile work environment.

84. As described above, Defendants violated this section as set forth herein.

**FOURTH CAUSE OF AGAINST DEFENDANT PENTA RESTORATION (RETALIATION IN VIOLATION OF N.Y. EXEC. LAW § 296)**

85. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

86. The New York State Human Rights Law, N.Y. Exec. Law 296 provides, in pertinent part: "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

87. On December 11, 13, and 15, 2021, Ms. Michaelides emailed Raptis and then Fillas about Clymer's sexual harassment and thereby engaged in protected activity.

88. Ms. Michaelides asked to be removed from Clymer's supervisory and expressed that she felt uncomfortable working with him on December 15, 17, and 18, 2020.

89. On January 13, 2021, Ms. Michaelides texted Raptis stating, "So when do I not have to work with him any longer George? I thought it was as soon as Snezhka was back."

90. On January 22, 2021, Defendant unlawfully terminated Ms. Michalides' employment in retaliation to her complaint of sexual harassment against Clymer.

91. Defendant failed to reassign her to work with someone else. Defendant instead terminated Ms. Michaelides nearly one month after.

92. As described above, Defendant violated this section as set forth herein.

### FIFTH CAUSE OF AGAINST DEFENDANTS PENTA RESTORATION AND JUSTIN CLYMER
### (DISCRIMINATION IN VIOLATION OF N.Y.C ADMIN. CODE § 8-107)

93. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

94. New York City Administrative Code § 8-107 provides, in pertinent part: "It shall be unlawful discriminatory practice: (a) For an employer or an employee or agent therefore, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

95. Defendants engaged in an unlawful employment practice by discriminating against Plaintiff and by subjecting her to unlawful sexual harassment.

96. Defendant Clymer subjected Ms. Michaelides to sexual harassment when he asked her on a date, asked to come over her house, offered to drive her to work, grabbed her face and kissed her on the cheek, and asked her to pinch his butt.

97. Besides subjecting Ms. Michaelides to sexual harassment, Defendant Clymer also discriminated against her because she is a woman. Defendant Clymer evinced his discriminatory animus when he stated to Ms. Michaelides that women do not belong in the construction field. Defendant Clymer made it difficult for Ms. Michaelides to execute her responsibilities by including but not limited to: excluding her from meetings; accusing her of failing to remember details; omitting pertinent information in relation to client orders and projects; directing her not to respond to client emails; and providing her with conflicting directives.

98. Defendants engaged in unlawful employment practices by allowing sexual harassment and gender discrimination, and causing a hostile work environment.

99. As described above, Defendant violated this section as set forth herein.

### SIXTH CAUSE OF AGAINST DEFENDANT PENTA RESTORATION
### (RETALIATION IN VIOLATION OF N.Y.C ADMIN. CODE § 8-107)

100. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

101. New York City Administrative Code § 8-107 provides, in pertinent part: "7. Retaliation. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a

complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

102. On December 11, 13, and 15, 2021, Ms. Michaelides emailed Raptis and then Fillas about Clymer's sexual harassment and thereby engaged in protected activity.

103. Ms. Michaelides asked to be removed from Clymer's supervisory and expressed that she felt uncomfortable working with him on December 15, 17, and 18, 2020.

104. On January 13, 2021, Ms. Michaelides texted Raptis stating, "So when do I not have to work with him any longer George? I thought it was as soon as Snezhka was back."

105. On January 22, 2021, Defendant unlawfully terminated Ms. Michalides' employment in retaliation to her complaint of sexual harassment against Justin Clymer.

106. Defendant failed to reassign her to work with someone else. Defendant instead terminated Ms. Michaelides nearly one month after.

107. As described above, Defendant violated this section as set forth herein.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.     Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Administrative Code § 8-101, *et seq* by discriminating against Plaintiff on the basis of her sex, by subjecting her to unlawful sexual harassment and a hostile work environment and by unlawfully retaliating against her following her engagement in protected activity;

B.     Awarding damages to the Plaintiff, resulting from Defendants' unlawful discriminatory and retaliatory actions against her and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

C.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
April 23, 2021

                                        Respectfully submitted,

                                        /s/*Michael P. Hilferty*
                                        Michael P. Hilferty
                                        Nina A. Ovrutsky
                                        White, Hilferty & Albanese
                                        *Attorneys for Plaintiff*
                                        800 Third Avenue, Suite 2800
                                        New York, New York 10022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
GEORGIA MICHAELIDES,

**<u>VERIFICATION</u>**

                      Plaintiff,

    -against-

PENTA RESTORATION CORPORATION,
and JUSTIN CLYMER, individually,

                      Defendant(s).
-----------------------------------------------------------------------X

    GEORGIA MICHAELIDES, pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1. I am the Plaintiff herein.

2. I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.


Executed :    New York, New York
                  April 16, 2021

                                                  _____
                                                  Georgia Michaelides